UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:23-cv-23785

ADEIA BREWTON,

       Plaintiff,

v.

CARNIVAL CORPORATION,

       Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ADEIA BREWTON ("BREWTON"), sues Defendant, CARNIVAL CORPORATION ("CARNIVAL"), and alleges:

1.    BREWTON is a citizen of the state of Texas, and is entitled to a jury trial pursuant to *Leslie v. Carnival Corp*., 22 So. 3d 561,562, (Fla. 3d DCA 2008).

2.    Defendant, CARNIVAL, is a foreign entity incorporated in Panama, with its principal place of business in Florida.

3.    The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332. In the alternative, if diversity jurisdiction does not apply, then this matter falls under the admiralty and maritime jurisdiction of this Court.

4.    CARNIVAL, at all times material hereto, through an agent:

    a.    Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

b.      Was engaged in substantial activity within this state;

c.      Operated vessels in the waters of this state;

d.      Committed one or more of the acts stated in Florida Statutes §§ 48.081, 48.181 and/or 48.193;

e.      The acts of CARNIVAL set out in this Complaint occurred in whole or in part in this county and/or state.

f.      CARNIVAL was engaged in the business of providing to the public and to BREWTON in particular, for compensation, vacation cruises aboard their vessel(s), excursions, and/or premises.

5.      CARNIVAL is subject to the jurisdiction of the courts of the state of Florida.

6.      The causes of action asserted in this Complaint arises under the General Maritime Law of the United States.

7.      BREWTON has satisfied all conditions precedent to the bringing of this action.

**FACTS COMMON TO ALL COUNTS**

8.      At all times material hereto, CARNIVAL owned, operated, managed, maintained and/or controlled the vessel, the CARNIVAL *Sunrise*.

9.      At all times material hereto, CARNIVAL owned, operated, managed, maintained and/or controlled the subject excursion.

10.     At all times material hereto, the subject excursion was provided by employees and/or agents of CARNIVAL, including, but not limited to, the excursion operator and the premise/ATV

owner (collectively referred to as the "Excursion Entities").

11.    At all times material hereto, all relevant personnel at the excursion location were crewmembers, employees, agents and/or borrowed servants of CARNIVAL, including, but not limited to, the Excursion Entities.

12.    On or about September 6, 2023, BREWTON was on a cruise in which the CARNIVAL *Sunrise* was the cruise vessel, which had been in navigable waters.

**Statements Concerning
Shore Excursions Generally and the Subject Excursion Specifically**

13.    BREWTON paid the deposit for the subject cruise on March 15, 2023, paid the balance on April 12, 2023, and on April 25, 2023, BREWTON purchased the subject excursion, the "Jungle ATV & Secret Blue Hole Adventure" (hereinafter "subject excursion").

14.    CARNIVAL's website contained information and descriptions of shore excursions, including the subject excursion.

15.    BREWTON relied on the CARNIVAL website in purchasing the subject excursion, which represented that the excursions, including the subject excursion, were operated and/or overseen by CARNIVAL, its agent(s), and/or they were safe. For example, in addition to the representations contained in BREWTON'S separate count for negligent misrepresentation:

   a.    CARNIVAL's website publicly described the shore excursions in proprietary language.

   b.    CARNIVAL also represented in its website that prospective customers of the subject excursion could have peace of mind knowing their tours are run by

insured operators and that such operators were safe and agents of CARNIVAL.

16.    At all times material hereto, the subject excursion was offered, marketed, sponsored, recommended, sold, arranged, owned, operated and/or managed by CARNIVAL, and BREWTON believed that the subject excursion was operated by agents of CARNIVAL.

17.    At all times material hereto, BREWTON reviewed CARNIVAL's information and/or material concerning the subject excursion and relied upon CARNIVAL's representations exclusively and to BREWTON'S detriment in deciding to purchase the subject excursion from CARNIVAL and to participate in same during BREWTON'S cruise aboard the CARNIVAL *Sunrise*.

## Subject Incident

18.    On or about September 6, 2023, as part of BREWTON'S cruise, BREWTON participated in the subject excursion at the Yaaman Adventure Park in Ocho Rios, Jamaica.

19.    On September 6, 2023, BREWTON was a passenger on the CARNIVAL *Sunrise*. BREWTON purchased an excursion through CARNIVAL called, the "Jungle ATV & Secret Blue Hole Adventure" tour.

20.    BREWTON was on her ATV approaching a puddle of muddy water when she hit a series of rocks underneath the water, which was deceptively deep.

21.    As a result, the ATV flipped over, she fell off of it, and the ATV fell on her leg.

22.    Among other things, CARNIVAL and the Excursion Entities did not properly warn or instruct her on how to safely operate the ATV, particularly in regard to avoiding or minimizing

hazards, and especially in regard to what to do to avoid her ATV flipping over. They also did not warn or instruct her that there were deep muddy puddles with hidden rocks underneath that could flip her ATV over. Moreover, CARNIVAL and the Excursion Entities should not have provided such a dangerous ATV, which was  worn out, poorly maintained, which had breaks that had poor responsiveness,  and which had tires that had virtually no tread, and that had poor, unstable, and loose steering such that when BREWTON hit the rock underneath the water, she was unable to control her ATV, thereby causing it to flip over. CARNIVAL and the Excursion Entities should also not have provided such a dangerous excursion area with dangers such as deep muddy puddles with hidden rocks that could flip ATVs over.

23.    As a result, BREWTON suffered severe injuries, pain, and suffering, including, but not limited to, injuries to her left elbow and knee, cellulitis, infections, including, but not limited to, enterococcus faecalis and enterbacter clloacae complex, and other injuries.

24.    The excursion was purchased by BREWTON through CARNIVAL's excursion website. There was no sufficient mention in the advertisement or the purchase confirmation for the excursion from CARNIVAL that the excursion was being operated by independent contractors for whom CARNIVAL believed it was not responsible. Instead, CARNIVAL intentionally created the appearance that it was providing the excursion either directly or through agents of CARNIVAL. BREWTON placed trust in CARNIVAL and relied on CARNIVAL--not some unknown entity she had never heard of before. Furthermore, CARNIVAL received part of the fee that BREWTON paid for the excursion.

25.    At all times material hereto, CARNIVAL was or should have been on notice that the

subject excursion was dangerous and/or risk creating. For instance, previous customers complained and/or commented about dangers virtually identical to the ones BREWTON encountered directly to CARNIVAL, and its sister, subsidiary, and parent corporations, through its website and/or through complaints, comments, and/or other reviews though other sources that CARNIVAL monitors and/or should monitor for the safety of its passengers on its excursions, such as Tripadvisor, and more importantly, previous passengers sued CARNIVAL CORPORATION and its sister, subsidiary, and parent corporation cruise lines, for virtually identical dangers encountered at other ATV tours offered by these companies, such that CARNIVAL knew or should have known that these were common types of dangers in ATV excursions that, at a minimum, it should have warned its passengers of.

26.    These prior incidents include, but are not limited to, Thompson v. Carnival Corp., No. 20-22217-CIV, 2021 WL 7542954, at *1 (S.D. Fla. Sept. 17, 2021) ("While participating in the excursion, Plaintiff traversed the trails when she discovered that the terrain had mud holes. Plaintiff was unable to steer around the mud holes because Carnival instructed her to stay on the trail. Plaintiff struck the mud holes, and it caused her ATV to stop abruptly while throwing her through the air and into a tree. Plaintiff suffered a compound fracture to her left leg and the injury rendered her unconscious."), Richards v. Carnival Corp., No. 14-23212-CIV, 2015 WL 12851709, at *2 (S.D. Fla. Aug. 26, 2015) ("The 'subject ATV' is defined as 'the ATV that flipped over, throwing the Plaintiff off, and landing on Plaintiff's leg ... during the subject excursion.'"), Sweeney v. Carnival Corp., 336 F.R.D. 387, 392 (S.D. Fla. 2020) ("As the K.T. Court noted, a court must at this procedural point accept the allegations as true. Therefore, I am accepting as true Sweeney's allegations that **ATV excursions sponsored by Carnival in myriad locations**

**throughout the world are inherently dangerous**. Given this procedural reality, the duty to warn allegation drives the permissible discovery.") (emphasis added),, Carnival Corp. v. Operadora Aviomar S.A. de C.V., 883 F. Supp. 2d 1316, 1318 (S.D. Fla. 2012) ("On February 29, 2008, in Acapulco, Mexico, an employee of Plaintiff Carnival sustained personal injuries during an ATV shore excursion owned and operated by Defendant Aviomar."), Richards v. Carnival Corp., No. 14-23212-CIV, 2015 WL 1810622, at *1 (S.D. Fla. Apr. 21, 2015) ("Richards alleges that while participating in the ATV excursion, the ATV "flipped over throwing the Plaintiff off." Compl. ¶ 29. Richards suffered severe injuries after the ATV landed on her left leg, including a fractured femur. Id. She maintains that "defective and poorly working brakes" were the cause of the accident, and that she and "at least 2–3 other passengers" had alerted the tour operator of the ATV brakes' defective condition."), Serra-Cruz v. Carnival Corp., No. 1:18-CV-23033-UU, 2019 WL 13190647, at *2 (S.D. Fla. Feb. 12, 2019) ("At the beginning of the Excursion, and when passengers began navigating the trails, the tour guides did not provide sufficient instructions or supervision to participants concerning how to properly operate an ATV. Id. Plaintiff had difficulty maneuvering the ATV, and while attempting to navigate over the rough and uneven terrain, Plaintiff crashed, was thrown off the ATV, and the ATV landed on top of her. As a result, Plaintiff suffered severe injuries. Id.").

27.    Moreover, CARNIVAL, and its sister, subsidiary, and parent corporations, have been sued numerous times for negligent failure to retain in regard to its excursion operators, including the subject excursion operator.

28.    CARNIVAL was also made aware through other complaints, comments, and/or other reviews about these dangers of the subject excursion and/or similar excursions. For example, the

description and reviews from CARNIVAL's own website, as well as reviews on third party websites that CARNIVAL requires its excursion operators to report, are attached below, which illustrate that CARNIVAL knew that the subject excursion was dangerous. See https://www.carnival.com/shore-excursions/falmouth/jungle-atv--secret-blue-hole-adventure-442089; see also https://www.carnival.com/shore-excursions/ocho-rios/jungle-atv--secret-blue-hole-adventure-425175; see also https://www.tripadvisor.com/Attraction_Review-g147312-d148871-Reviews-Yaaman_Adventure_Park-Ocho_Rios_Saint_Ann_Parish_Jamaica.html; see also

https://www.google.com/search?q=Yaaman+Adventure+Park+in+Ocho+rios&oq=Yaaman+Adventure+Park+in+Ocho+rios&aqs=chrome..69i57j0i22i30.984j0j15&sourceid=chrome&ie=UTF-8#lrd=0x8edafe77c3703173:0xccd8c4c5ae52a824,1,,,,







tripadvisor.com/Attraction_Review-g147312-d148871-Reviews-Yaaman_Adventure_Park-Ocho_Rios_Saint_Ann_Parish_Jamaica.html





tripadvisor.com/Attraction_Review-g147312-d148871-Reviews-or30-Yaaman_Adventure_Park-Ocho_Rios_Saint_Ann_Parish_Jamaica.html



tripadvisor.com/Attraction_Review-g147312-d148871-Reviews-or20-Yaaman_Adventure_Park-Ocho_Rios_Saint_Ann_Parish_Jamaica.html

‹ See all things to do

Yaaman Adventure Park ● 4

Photos   Tours & Tickets   Reviews

**Book a Tour**




anami1879PS
Clifton, New Jersey • 5 contributions

👍 0   •••

●●●●● 
**Great muddy experience**

Jul 2019

My husband and I went to Jamaica for our honeymoon and in all the time we've been dating (almost 8 years) he'd been dying to do one of these ATV runs. I figured what better than to also get muddy doing it? We both LOVED this activity! The instructors and tour guides are very helpful and fun to be around. Make sure the person driving is comfortable being on uncomfortable terrain because there are alot of rocks and hills etc to get over - and you gotta do it fast! The muddy parts are fun, if you're not comfortable getting completely soaked in muddy water, don't do this. They do have showers to rinse off afterwards though! I'd say the driving was about 45 min-1 hr, the rest of the time you can hang out, look/purchase the pictures they took of you, and get some refreshments at the stand. Definitely worth the $100 we spent per ticket!

Read less ⌄

Written August 12, 2019

This review is the subjective opinion of a Tripadvisor member and not of Tripadvisor LLC. Tripadvisor performs checks on reviews as part of our industry-leading trust & safety standards. Read our transparency report to learn more.

 Econcierge The Dolphin Co 2                                        •••

Dear Traveler We greatly appreciate your view at Yamman Adventure Park and especially for taking the time to tell us about our services. We are pleased to know that it was an excellent quality experience and that your encounter with the dolphins was wonderful. We hope to have th...

Read more ⌄

Written September 19, 2019

This response is the subjective opinion of the management representative and not of Tripadvisor LLC.

 Eileen F
Derby, CT • 73 contributions

👍 0   •••

●●●●●
**A Highlight of our Jamaica vacation!!!!**

Jul 2016 • Couples

We did the dune buggy ride. It's billed as "Wet & Dirty"... and it truly is. Dust and dirt flying everywhere, splashing through huge mud puddles — and so much fun! The trail also had lots of twists and turns, rocks, ruts and more. There were two brief stops – one was educational on the fruits of jamaica with a sampling of coconut. The was a photo op with a camel. There were a bunch of pictures taken on the ride by the photographer. I was impressed because while they couldn't print out the pictures because their building had lost power, they delivered them to our hotel as promised! And there were some GREAT shots. Wear OLD, ratty clothing as you will be beyond dirty!




Ad
Sponsored by Bahamas Out Islands
**Here's to the Daydreamers**
Discover a breathtaking collection of islands filled with unbelievable sights, sounds, and experiences.

tripadvisor.com/Attraction_Review-g147312-d148871-Reviews-or20-Yaaman_Adventure_Park-Ocho_Rios_Saint_Ann_Parish_Jamaica.html





## Yaaman Adventure Park

Prospect, St. Mary Rte 3, 3 miles east of Ocho Rios, Ocho Rios, P.O. 21, Jamaica, Ocho Rios, Jamaica

**Write a review**

**3.9** ★★★★☆  400 reviews ⓘ

Most relevant · Newest · Highest · **Lowest**

**Eva Roberts-Madrid**
6 reviews · 2 photos
★☆☆☆☆ a month ago

There were 7 in our party. The tour sales person told us to take cameras, phones and clothes that could get wet due to a river crossing. You can't take anything that can take a picture at all and lockers are $10 or leave it on the bus. Three of us signed up for the zip line and buggy tours and 4 for the buggys only. We bought the photo package ahead of time for a discounted rate (only valid right now scam). The buggy's are horribly maintained with one unable to lock the drivers seat in, one pumping out black smoke and had to be moved to the back if the line so we could breathe, and the steering was dangerously loose on all of them. The trail was short so we just made the same loop a few times. No sights to see at all and only a small mud puddle that we went through twice. The camera person didn't get a single photo of us on the buggys and faked a few on the ATVs (which we did not ride) at the end. Lunch was decent but no drinks are provided, not even water. You can pay for them of course but your things are locked on the bus! The zip lines were good, but the water feature is a cement tub in the woods that you can land in. We have the exact photo (hanging from the zip line) for less than half of our group. We were refunded half our photo money which was still too much to pay! Worst tour I have ever been on, but our bus drive Marlon was fantastic!

**Visited on**
Weekday

## Yaaman Adventure Park

Prospect, St. Mary Rte 3, 3 miles east of Ocho Rios, Ocho Rios, P.O. 21, Jamaica, Ocho Rios, Jamaica

**Write a review**

**3.9** ★★★★☆  400 reviews ⓘ

 **nyeelah johnson**
2 reviews
★☆☆☆☆ 3 months ago

I DO NOT RECOMMEND. First, upon arrival they weren't even open & the lady at the front desk (Shandell) had an attitude, didn't even allow us to use the restroom. Next during the process of us signing paperwork we weren't informed of the additional $10 insurance fee. Personally, I believe that the price should've been included and/or the lady that sold us the package should have informed us on that. Next, after all the paperwork and stuff was done, they told us that we couldn't take ANYTHING on the atv/dune buggies. The lady said that the photo package was $25 pp, when all said and done she tried to charge $130 for 3 people. I've never been on any excursion where phones/personal belongings weren't allowed. The ATVs and DUNE buggies are very old, they break down every couple of minutes, the steering was very unstable. I felt like I was going to crash! When it was time for lunch the other lady who works the bar (Twanah) said that drinks weren't included when we were informed also that they were. Everybody who works for Yaaman have different information, and nobody is on the same page. The boogie tour wasn't even an hour. I personally don't believe their tour and establishment is worth the price they are charging. Save your coins and book somewhere else

👍 Like

 **Dian Brun gow**
7 reviews · 9 photos



## Yaaman Adventure Park

Prospect, St. Mary Rte 3, 3 miles east of Ocho Rios, Ocho Rios, P.O. 21, Jamaica, Ocho Rios, Jamaica

3.9 ★★★★★  400 reviews ⓘ

✎ Write a review

**Sofie P.**
3 reviews

★★★★★ a year ago

Worst buggy tour ever! Not worth the money!

We are extremely disappointed in the organization of Yaaman. We had booked a buggy tour for 3 adults at 12 noon. After checking in, we were directed to the dining area where we had to wait for the attendant. After an hour of impatient waiting, we asked for more explanation: 'Sorry, the buggies are not back yet and on cruise days we cannot guarantee hours...'

Why is there an appointment time on the voucher?

Besides, it was anything but busy there. We had a view of the parking lot and we never saw a large group of cruise passengers arrive.

After waiting for almost 1.5 hours, we started to get very annoyed with the waiting time. Together with another 4 waiting customers we were compensated for a ride with the Jitney tractor to the Secret River. This would make the wait less of a hassle. The tractor takes you to a stream with a very small swimming pool. There were 2 short cables hanging above the water for a bit of a thrill, but you had to pay for this! Those who were thirsty could buy a drink at high prices. There was simply nothing to do there except spend money on extras and tips.

Eventually we were taken back to reception. Two hours had already passed and it was proposed to eat first (a meal is included as standard). Our lunch was served and shortly after we were asked to go to the buggy station. We didn't regret not having more time because the jerk chicken was the worst ever!

After 3 hours of waiting, the fun could finally begin... until our buggy broke down twice. The tour itself only lasted half an hour and for us this was a 15 minute drive through the repairs that had to be done during the tour. We were not alone with engine problems. The vehicles are simply not maintained.

Don't expect a 2 hour tour as stated on the website! Two hours includes meal, safety instructions and waiting times.

## Yaaman Adventure Park

Prospect, St. Mary Rte 3, 3 miles east of Ocho Rios, Ocho Rios, P.O. 21, Jamaica, Ocho Rios, Jamaica

3.9 ★★★★★  400 reviews ⓘ

✎ Write a review

**Joe Lepore**
7 reviews

★★★★★ 2 years ago

The place looks cool. They have a decent gift shop and the food they provide isn't too bad, although it is not very much.

This is getting a 2-star for their ATVs. They must have an amazing mechanic because these things should be in a scrap yard. Ignition switches are dangling, most of the utility racks and brush guards are rusted through. There is also zero tread on any tires, but they run somehow.

The ride all together was about 20 minutes of just putting along. There's one mud hole and you have to crawl through it, so there's no fun in that. The ATV "Tour" was just riding down a path with signs on trees describing what they are, but there's no time to read anything.

Overall, I will say this is a huge waste of money.

👍 3

**Hayley Morrison**
3 reviews

★★★★★ 3 years ago

We did the dune buggy tour, which was really fun. The guides that we had, Jason and Kevin were great. The reason for giving 2 stars is for the overall organization of this facility. Our tour was supposed to be

29.     CARNIVAL also knew or should have known of these dangers and/or issues as complaints, comments, and/or other reviews were either posted on its website, which it either reviewed or should have reviewed prior to BREWTON'S incident, and/or other sources it either reviewed or should have reviewed prior to BREWTON'S incident.

30.     CARNIVAL's policies and procedures in regard to its excursion operators require that these operators disclose all prior incidents to CARNIVAL CORPORATION and to CARNIVAL.

### FACTS CONCERNING THE RELATIONSHIP/ARRANGEMENT BETWEEN CARNIVAL AND THE EXCURSION ENTITIES

31.     At all times material hereto, the Excursion Entities were the agents and/or apparent agents of CARNIVAL by virtue of the following, such that CARNIVAL is estopped from denying that the Excursion Entities were the agents and/or apparent agents of CARNIVAL:

a. CARNIVAL made all arrangements for the subject excursion without sufficiently disclosing to BREWTON that the subject excursion was being run by another entity and/or entities that it did not believe were its agents; and/or

b. CARNIVAL marketed the subject excursion using its company logo on its website and/or in its brochures and/or on its ship without sufficiently disclosing to BREWTON that the subject excursion was being run by another entity and/or entities that it did not believe were its agents; and/or

c. CARNIVAL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without sufficiently disclosing to BREWTON that the subject excursion was being run by another entity

and/or entities that it did not believe were its agents; and/or

d. CARNIVAL recommended that its passengers not engage in excursions, tours and/or activities that are not sold through CARNIVAL; and/or

e. Until the point that BREWTON actually participated in the subject excursion, BREWTON'S exclusive contacts concerning the subject excursion was with CARNIVAL; and/or

f. The fee for the subject excursion was charged to BREWTON, and collected from BREWTON, exclusively by CARNIVAL; and/or

g. BREWTON received the receipt for the purchase of the subject excursion exclusively from CARNIVAL.

32.    At all times material hereto, BREWTON relied on the above, to BREWTON'S detriment, so as to believe that the Excursion Entities were the employee(s) and/or agent(s) of CARNIVAL, in choosing the subject excursion. At no time did CARNIVAL sufficiently represent to BREWTON in particular, or the ship's passengers in general, in a meaningful way that the Excursion Entities were not agent(s) and/or employee(s) of CARNIVAL.

33.    At all times material hereto, CARNIVAL was the owner or co-owner of the subject excursion. At all times material hereto, CARNIVAL was responsible for, and liable for, the actions of the Excursion Entities with respect to the subject excursion.

34.    In the alternative, at all times material hereto, a partnership and/or joint venture existed between the Excursion Entities by virtue of the following, whereby CARNIVAL and the Excursion Entities are jointly and severally responsible for the negligence of each other as partners of the partnership and/or joint venture:

a. CARNIVAL and the Excursion Entities entered into a verbal agreement and/or an agreement through the course of its dealings with each other, whereby: CARNIVAL made all arrangements for BREWTON, on behalf of the partnership with the Excursion Entities, for the subject excursion being run by the Excursion Entities; and/or

b. CARNIVAL marketed on CARNIVAL's website and/or in its brochures and/or on its ship, on behalf of the partnership with the Excursion Entities, the subject excursion being run by the Excursion Entities; and/or

c. CARNIVAL maintained an excursion desk on its ship where it offered, sold, provided information to, and answered questions of passengers, on behalf of the partnership with the Excursion Entities, about the subject excursion being run by the Excursion Entities; and/or

d. The Excursion Entities provided the equipment to be used in the subject excursion; and/or

e. CARNIVAL determined the amount of money charged for the subject excursion being run by the Excursion Entities; and/or

f. CARNIVAL collected the amount of money charged for the subject excursion being run by the Excursion Entities; and/or

g. CARNIVAL shared profits with the Excursion Entities for the subject excursion by retaining a portion of the ticket sales for the subject excursion after the tickets were sold, and paying the Excursion Entities the remaining portion of the ticket sales for the subject excursion; and/or

h. CARNIVAL shared losses with the Excursion Entities for the subject excursion, including, for instance, when CARNIVAL issued a refund to passengers for the Excursion Entities' excursion(s), including, but not limited to, the subject excursion.

35.     At all times material hereto, CARNIVAL was a partner in the subject excursion.

36.     At all times material hereto, CARNIVAL operated and/or supervised the subject excursion.

37.     At all times material hereto, the Excursion Entities owned and operated the subject excursion. The Excursion Entities were involved in providing the subject excursion to BREWTON. At all times material hereto, the Excursion Entities were the agent(s), apparent agent(s), joint venturer(s), servant(s), and/or employee(s) of CARNIVAL and at all times acted within the course and scope of their agency, apparent agency, joint venture, service and/or employment.


**FACTS CONCERNING THE NEGLIGENCE AGAINST THE EXCURSION ENTITIES**

38.     At all times material hereto, it was a duty of the Excursion Entities to provide BREWTON with reasonable care under the circumstances.

39.     On or about September 6, 2023, the Excursion Entities and/or their agents, employees and/or crewmembers breached their duty to provide BREWTON with reasonable care under the circumstances through the negligent instructions and other conduct of the excursion entity's tour guide, by failing to remedy, and by failing to warn of, the dangerous conditions discussed in **paragraphs 18-30**.

40.     These acts and/or omissions by the Excursion Entities, their agents, employees and/or crewmembers, directly caused and/or contributed to BREWTON being severely injured. These acts and/or omissions resulted in these conditions being unreasonably dangerous, which in turn

caused BREWTON'S incident. In turn, these acts and/or omissions resulted in BREWTON'S injuries, pain, suffering, and other damages.

41.     At all times material hereto, the Excursion Entities knew of the foregoing conditions causing BREWTON'S incident and did not correct them, or the conditions existed for a sufficient length of time so that the Excursion Entities, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them. Insofar as it relates to conditions that the Excursion Entities did not create, the Excursion Entities' knowledge was or should have been acquired through prior incident(s), through its maintenance and/or inspections of the subject excursion (including, but not limited to, inspections that revealed the dangers and/or which would have revealed the dangers had the inspections adequately taken place instead of either failing to occur and/or inadequately occurring), and/or through its training and/or supervision of its agents, employees and/or crewmembers, which either revealed or should have revealed their incompetence.

42.     As a direct and proximate result of the negligence of the Excursion Entities, BREWTON was injured about BREWTON'S body and extremity, suffered physical pain, mental anguish, lost wages, lost earning capacity, loss of enjoyment of life, disability, disfigurement, traumatic stress and other mental and/or nervous issues, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of BREWTON'S injuries, suffered physical handicap, both past and future. The injuries are permanent or continuing in nature and BREWTON will suffer the losses and impairments in the future. In addition, BREWTON lost the benefit of BREWTON'S vacation, cruise, transportation, and other associated costs.

**COUNT I – NEGLIGENT RETENTION AGAINST CARNIVAL**

BREWTON re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1-30 and 38-42 as though alleged originally herein.

43.  At all times material hereto, it was the duty of CARNIVAL to provide BREWTON with reasonable care under the circumstances.

44.  At all times material hereto, CARNIVAL had a duty not to retain incompetent and/or unfit excursion operators.

45.  At all times material hereto, as part of its duty not to retain incompetent and/or unfit excursion operators excursion operators, it was incumbent on CARNIVAL to diligently inquire into the Excursion Entities' competency and fitness.

46.  On or about September 6, 2023, CARNIVAL and/or its agents, servants, joint venturers and/or employees breached its duty to provide BREWTON with reasonable care under the circumstances by retaining the Excursion Entities, who CARNIVAL knew or should have known were incompetent and/or unfit based on the failures discussed in **paragraphs 18-30**.

47.  At all times material hereto, CARNIVAL knew or should have known of the foregoing conditions causing the Excursion Entities' incompetence and/or unfitness, or the conditions existed for a sufficient length of time so that CARNIVAL, in the exercise of reasonable care under the circumstances, should have learned of them, for the reasons discussed in **paragraphs 18-30**, as well as through the following means:

a. CARNIVAL's initial approval process of the Excursion Entities and/or the excursion, including, but not limited to, having CARNIVAL's representative(s) take the excursion; and/or

b. CARNIVAL's yearly inspections of the Excursion Entities and/or the excursion, including, but not limited to, conducting site inspections; and/or

c Thoroughly inquiring into the Excursion Entities' certification(s), reputation, reviews, prior incidents, years in operation, and/or history in working with other cruise lines; and/or

d. Examining the complaints and/or reviews of prior CARNIVAL passengers who had participated in the excursion; and/or

e. Periodically requesting and examining safety history reports from the Excursion Entities as well as periodically sending CARNIVAL's own staff to visit the excursion site(s) and evaluate the excursion experience.

48.   At all times material hereto, the Excursion Entities' incompetence and/or unfitness caused and/or contributed to BREWTON being severely injured while participating in the subject shore excursion.

49.   As a direct and proximate result of the negligence of CARNIVAL and/or the Excursion Entities, BREWTON was injured about BREWTON'S body and extremity, suffered physical pain, mental anguish, lost wages, lost earning capacity, loss of enjoyment of life, disability, disfigurement, traumatic stress and other mental and/or nervous issues, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of BREWTON'S injuries, suffered physical handicap, both past and future. The injuries are permanent or continuing in nature and BREWTON will suffer the losses and impairments in the future. In addition, BREWTON lost the benefit of BREWTON'S vacation, cruise, transportation, and other associated costs.

WHEREFORE, BREWTON demands judgment for all damages recoverable under the law and demands trial by jury.

### COUNT II – NEGLIGENT FAILURE TO WARN AGAINST CARNIVAL

BREWTON re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1-30 and 38-42 as though alleged originally herein.

50.   At all times material hereto, it was the duty of CARNIVAL to provide BREWTON with reasonable care under the circumstances.

51.   At all times material hereto, it was the duty of CARNIVAL to warn passengers (like BREWTON) of dangers that were known, or reasonably should have been known, to CARNIVAL in places where passengers (like BREWTON) are invited to or may reasonably be expected to visit beyond the point of disembarkation.

52.   On or about September 6, 2023, BREWTON was participating in the subject excursion, which CARNIVAL invited and reasonably expected BREWTON to participate in since CARNIVAL sold BREWTON the ticket for the excursion.

53.   On or about September 6, 2023, CARNIVAL and/or its agents, servants, joint venturers and/or employees breached its duty to warn BREWTON by failing to warn of the dangerous conduct and conditions discussed in **paragraphs 18-30**.

54.   All or some of the above acts and/or omissions by CARNIVAL and/or its agents, servants, and/or employees, caused and/or contributed to BREWTON being severely injured while participating in the subject excursion.

55.   Had BREWTON been adequately warned, BREWTON would not have participated

in the subject excursion, BREWTON'S incident would not have occurred, and/or his injuries would have been less severe.

56.     At all times material hereto, CARNIVAL knew of the foregoing dangerous conditions causing BREWTON'S incident and failed to warn BREWTON about them, or the conditions existed for a sufficient length of time so that CARNIVAL, in the exercise of reasonable care under the circumstances, should have learned of them and warned about them. This knowledge was or should have been acquired through: (a) CARNIVAL's initial approval process of the Excursion Entities and/or the excursion, including, but not limited to, having CARNIVAL's representative(s) take the excursion; (b) CARNIVAL's yearly inspections of the Excursion Entities and/or the excursion, including, but not limited to, conducting site inspections; and/or (c) Prior substantially similar incidents involving CARNIVAL passengers injured on the subject excursion involving the same or substantially similar excursions operated by the Excursion Entities; and/or (d) Examining the complaints and/or reviews of prior CARNIVAL passengers and passengers of CARNIVAL's sister and parent corporation who had participated in the excursion, as well as the reasons discussed in **paragraphs 18-30**.

57.     As a direct and proximate result of the negligence of CARNIVAL and/or the Excursion Entities, BREWTON was injured about BREWTON'S body and extremity, suffered physical pain, mental anguish, lost wages, lost earning capacity, loss of enjoyment of life, disability, disfigurement, traumatic stress and other mental and/or nervous issues, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of BREWTON'S injuries, suffered physical handicap, both past and future. The injuries are permanent or continuing in nature and BREWTON will suffer the losses and impairments in the

future. In addition, BREWTON lost the benefit of BREWTON'S vacation, cruise, transportation, and other associated costs.

WHEREFORE, BREWTON demands judgment for all damages recoverable under the law and demands trial by jury.

### COUNT III – NEGLIGENT MISREPRESENTATION AGAINST CARNIVAL

BREWTON re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1-42 as though alleged originally herein.

58.    As the owner of a ship in navigable waters, CARNIVAL owed to all who are on board the Ship the duty of exercising reasonable care under the circumstances of matters related to the subject incident. This duty extends to shore excursions such as the subject excursion where the subject incident occurred. This duty applies to the representations that CARNIVAL made to passengers, including BREWTON, about the subject excursion, as well as CARNIVAL's omissions of material fact.

59.    On April 25, 2023, BREWTON purchased tickets for the subject shore excursion, the "Jungle ATV & Secret Blue Hole Adventure." On this date, CARNIVAL described this excursion on its website as described in **paragraphs 13-17**:

60.    Although CARNIVAL had, through its prior dealings with the excursion company offering this excursion, as well as its contacts, and as well as its office in Ocho Rios, Jamaica, actual and/or constructive knowledge of the danger of the subject excursion, including the location where BREWTON's incident occurred, CARNIVAL never qualified its representations by noting any risk of serious and disfiguring injuries from such an excursion.

61.    CARNIVAL failed to disclose that there were these serious and deadly risks and hazards associated with the shore excursion as discussed in **paragraphs 18-30**, and failed to warn of the risk of death or severe injuries.

62.    CARNIVAL promoted the subject excursion — while simultaneously failing to disclose certain negative information including its serious and life-threatening potential risks and hazards — with the intent of inducing BREWTON and other passengers to purchase the subject excursion. Moreover, CARNIVAL in fact marketed the subject excursion as a "moderate" level activity on is website, despite the extreme risk of dangers such as the ATVs flipping over, and BREWTON relied on in purchasing the subject excursion.

63.    CARNIVAL received a financial benefit from the sale of every sale of the subject excursion through the website, including the sale of the ticket for this excursion to BREWTON.

64.    CARNIVAL knew or should have known that its failure to include statements about the risks of severe injuries or death was a failure to state material facts regarding the risk of the subject excursion.

65.    BREWTON purchased the subject excursion from CARNIVAL in reliance on the statements made by CARNIVAL about the excursion, and without the benefit of the material facts and information omitted by CARNIVAL from those statements regarding the danger of the excursion operator and the location of the incident, or other potential risks, in addition to misrepresenting that these excursion operators were agents of CARNIVAL.

66.    As a direct and proximate cause of the reliance upon the negligent misrepresentations by CARNIVAL, BREWTON unknowingly proceeded with the subject, with frightful

consequences. BREWTON has suffered ongoing mental anguish, lost wages, lost earning capacity, permanent disability, permanent disfigurement, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of BREWTON'S injuries, are continuing to incur and will incur future medical expenses, suffered physical handicap, both past and future, as a result of the eruption of the subject incident, which could have been avoided had CARNIVAL but for CARNIVAL's negligent misrepresentations and material omissions.

BREWTON asks for a verdict and damages in her favor on this count of Negligent Misrepresentation.

## COUNT IV – NEGLIGENCE AGAINST CARNIVAL
## BASED ON APPARENT AGENCY OR AGENCY BY ESTOPPEL

BREWTON re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1-42 as though alleged originally herein.

67.   At all times material hereto, the Excursion Entities were the apparent agent(s) of CARNIVAL.

68.   At all times material hereto, CARNIVAL is estopped to deny that the Excursion Entities were their agent(s) or employee(s).

69.   At all times material hereto, CARNIVAL made manifestations which caused BREWTON to believe that the Excursion Entities had authority to act for the benefit of CARNIVAL. These manifestations included:

a. CARNIVAL allowed its name to be utilized in connection with the advertising of the Excursion

Entities; and/or

b. CARNIVAL made all arrangements for the subject excursion without effectively disclosing to BREWTON that the subject excursion was being run by another entity and/or entities that it did not believe were its agents; and/or

c. CARNIVAL marketed the subject excursion using its company logo on its website and/or in its brochures and/or on its ship without effectively disclosing to BREWTON that the subject excursion was being run by another entity and/or entities that it did not believe were its agents; and/or

d. CARNIVAL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without effectively disclosing to BREWTON that the subject excursion was being run by another entity and/or entities that it did not believe were its agents; and/or

e. Until the point that BREWTON actually participated in the subject excursion, BREWTON'S exclusive contacts concerning the subject excursion was with CARNIVAL; and/or

f. CARNIVAL recommended to BREWTON to not engage in excursions, tours or activities that are not sold through CARNIVAL as CARNIVAL has no familiarity with other tours or their operations; and/or

g. The fee for the excursion was charged to BREWTON, and collected from BREWTON, exclusively by CARNIVAL; and/or

h. BREWTON received the receipt for the purchase of the subject excursion exclusively from CARNIVAL; and/or

i. The excursion was offered and utilized solely or virtually solely by CARNIVAL passengers at the time of the subject excursion and/or marketed by CARNIVAL.

70.     BREWTON reasonably relied on the above, to her detriment, so as to believe that the Excursion Entities were the employee(s) and/or agent(s) of CARNIVAL in choosing the subject excursion.

71.     It was reasonable to believe that the Excursion Entities were CARNIVAL's employee(s) and/or agent(s) because BREWTON purchased, paid for and made all necessary arrangements for the subject excursion with CARNIVAL. CARNIVAL's actions caused BREWTON to believe that the Excursion Entities had authority to act on CARNIVAL's behalf. At no time did the Excursion Entities represent to the ship's passengers or BREWTON in particular in a meaningful way that the Excursion Entities were not agents or employees of CARNIVAL.

72.     BREWTON'S reasonable reliance was detrimental because BREWTON would not have purchased, paid for and/or participated in the subject excursion had BREWTON known that the subject excursion was not operated by CARNIVAL and/or agents of CARNIVAL.

73.     The acts of negligence of the Excursion Entities discussed in **paragraphs 18-30**, acting as apparent agents for CARNIVAL, were a direct and proximate cause of BREWTON'S injuries and damages.

74.     As a result of the negligence of the CARNIVAL, BREWTON was injured about BREWTON'S body and extremity, suffered physical pain, mental anguish, lost wages, lost earning capacity, loss of enjoyment of life, disability, disfigurement, traumatic stress and other mental and/or nervous issues, aggravation of any previously existing conditions therefrom, incurred

medical expenses in the care and treatment of BREWTON'S injuries, suffered physical handicap, both past and future. The injuries are permanent or continuing in nature and BREWTON will suffer the losses and impairments in the future. In addition, BREWTON lost the benefit of BREWTON'S vacation, cruise, transportation, and other associated costs.

WHEREFORE, BREWTON demands judgment for all damages recoverable under the law and demands trial by jury.

### COUNT V – NEGLIGENCE AGAINST CARNIVAL BASED ON
### JOINT VENTURE BETWEEN CARNIVAL AND THE EXCURSION ENTITIES

BREWTON re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1-42 as though alleged originally herein.

75.     At all times material hereto, CARNIVAL and the Excursion Entities engaged in a joint venture to provide excursions to passengers aboard CARNIVAL's ship(s).

76.     At all times material hereto, CARNIVAL and the Excursion Entities entered into a verbal agreement, which superseded any previous agreements, where CARNIVAL would sell the subject excursion to its passengers and the Excursion Entities would operate the subject excursion. In the alternative, CARNIVAL entered into an agreement through its course of conduct by engaging in the conduct discussed in paragraphs 68-76, which superseded any previous agreements.

77.     As its part of the joint venture, CARNIVAL arranged for, sponsored, recommended, marketed, operated, marketed, sold and/or collected money for the subject excursion, and the money was then shared between CARNIVAL and the Excursion Entities. As its part of the joint venture, the Excursion Entities provided labor and/or operated the subject excursion.

78.     CARNIVAL, on behalf of the joint venture, charged a fee to passengers who utilized the excursions. The fee paid by the passengers, including BREWTON, was split between CARNIVAL and the Excursion Entities, such that CARNIVAL and the Excursion Entities shared a profit of the money made from the shore excursion.

79.     At all times material hereto, CARNIVAL and the Excursion Entities had joint and/or shared control over aspects of the joint venture. The Excursion Entities had control over the day-to-day workings of the excursions. CARNIVAL also had control over the day-to-day workings of the excursions in that they required the Excursion Entities to exercise reasonable care in the operation of the subject excursion. CARNIVAL had control over the arrangements, marketing and sales of the excursion.

80.     At all times material hereto, CARNIVAL and the Excursion Entities shared a common purpose: to operate the subject excursion for a profit.

81.     At all times material hereto, CARNIVAL and the Excursion Entities had a joint proprietary and/or ownership interest in the subject excursion. CARNIVAL had an interest in arranging, sponsoring, recommending, advertising, operating, and selling the subject excursion as well as collecting money for such excursion, and the Excursion Entities had a proprietary interest in the time and labor expended in operating the subject excursion.

82.     At all times material hereto, CARNIVAL and the Excursion Entities shared and/or had the right to share in the profits of the subject excursion, as CARNIVAL retained a portion of the ticket sales for the subject excursion after the tickets were sold, and CARNIVAL paid the Excursion Entities the remaining portion of the ticket sales for the subject excursion.

83. At all times material hereto, CARNIVAL and the Excursion Entities shared and/or had a duty to share any losses that may have been sustained with the subject excursion, including, for instance, when CARNIVAL issued a refund to passengers for the Excursion Entities' excursion(s), including, but not limited to, the subject excursion.

84. CARNIVAL and the Excursion Entities are jointly and severally responsible for each other's negligence as partners of the partnership and/or joint venture.

85. At all times material hereto, CARNIVAL and the Excursion Entities therefore:

a. Had an intention to create a joint venture;

b. Had a joint proprietary interest in the subject matter of the venture;

c. Had mutual control and/or joint control over the subject matter of the venture with respect to the provision of excursions to passengers aboard the ship;

d. Had a right to share in the profits of the joint venture; and

e. Would share losses which may have been sustained.

86. As joint venturers, CARNIVAL and the Excursion Entities are liable for each other's negligence. As a result, CARNIVAL is liable for the negligence of the Excursion Entities discussed in **paragraphs 18-30**.

87. As a result of the negligence of CARNIVAL, BREWTON was injured about BREWTON'S body and extremity, suffered physical pain, mental anguish, lost wages, lost earning capacity, loss of enjoyment of life, disability, disfigurement, traumatic stress and other mental and/or nervous issues, aggravation of any previously existing conditions therefrom, incurred

medical expenses in the care and treatment of BREWTON'S injuries, suffered physical handicap, both past and future. The injuries are permanent or continuing in nature and BREWTON will suffer the losses and impairments in the future. In addition, BREWTON lost the benefit of BREWTON'S vacation, cruise, transportation, and other associated costs.

WHEREFORE, BREWTON demands judgment for all damages recoverable under the law and demands trial by jury.

## **DEMAND FOR JURY TRIAL**

Plaintiff, ADEIA BREWTON, demands trial by jury on all issues so triable.

Dated: October 4, 2023

Respectfully submitted,

*/s/ Spencer Aronfeld*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Abby Hernández Ivey, Esq.**
Florida Bar No. 1002774
aivey@aronfeld.com
**Matthias M. Hayashi, Esq.**
Florida Bar No.: 0115973
mhayashi@aronfeld.com
ARONFELD TRIAL LAWYERS
1 Alhambra Plaza | Penthouse
Coral Gables, Florida 33134
P:       (305) 441.0440
F:       (305) 441.0198
*Attorneys for Plaintif*